## Schell *v.* Deperven, Appellant.

*Executors and administrators—Trust and trustee—Embezzlement by trustees—Pledging stock of the estate.*

Where a testator specifically bequeaths stock of a corporation to his executors as trustees, and one of the executors eight years after the death of the testator, and more than two years after the orphans' court had awarded the stock to him as trustee, pledges the stock as security for a loan, and embezzles the proceeds, the pledgee will not be entitled to hold the stock as against the estate, because if he had exercised due care and proper dili-

gence he would have ascertained that the trustee had no right to pledge the stock.

*Executors and administrators—Trust and trustee—Embezzlement by trustee—Pledging stock of the estate—Equity—Responsive answer.*

On a bill in equity by a surviving trustee to recover possession of stock which had been pledged by the other trustee at the time when the trustees were executors, the bill averred that the other trustee had wrongfully taken the stock and delivered it to the defendant, and that the latter refused to deliver it, and claimed the right to hold it as collateral for the loan made to the other trustee. The answer denied that the stock was wrongfully acquired, and averred that it had been received from the other trustee, when executor, to secure a loan made for the benefit of the estate, and that it was held by defendant to secure said loan. No evidence was introduced at the trial to support the allegations in the bill, or to contradict the averments in the answer. *Held*, that the answer was responsive to the bill, and that a decree should be entered in favor of the defendant.

Argued Jan. 11, 1901. Appeal, No. 251, Jan. T., 1900, by defendant, from decree of C. P. No. 4, Phila. Co., June T., 1899, No. 234, on bill in equity in case of Frederick H. Schell, Executor of Joseph E. Schell, Deceased, v. John H. Deperven, Executor of Henry Deperven, Deceased, Clyde E. Barton and Elizabeth S. M. Barton. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed in part.

Bill in equity for an account.

The facts are stated at length in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*William M. Stewart, Jr.*, for appellant.—An executor has authority to pledge the personal property of his decedent for the purpose of raising money or securing debts, and this authority rests upon the same principle and is governed by the same rules and is subject to the same limitations in general as apply to sales : Petrie v. Clark, 11 S. & R. 377 ; Smith v. Ayer, 101 U. S. 320 ; Wilson v. Doster, 7 Iredell's Eq. 231 ; Carter v. Manufacturers' National Bank, 71 Maine, 448 ; Field v. Schieffelin, 7 Johns. Ch. 150 ; Lowry v. Commercial & Farmers' Bank, 1 Taney C. C. 310 ; Perry on Trusts, sec. 225 ; Williams on Executors, 1000.

A simple denial of the wrongful delivery by Sibbs would

have put the defendant out of court had he not followed that with a denial that he claims to hold the stock as collateral for an individual loan to Sibbs : Volmer's App., 61 Pa. 118 ; Eaton's App., 66 Pa. 483.

Whatever is fairly responsive to the general scope of the claim set up in the bill, comes within the rule : Rich v. Austin, 40 Vt. 420 ; Smith v. Clark, 4 Paige, 368 ; Shiels v. Stark, 14 Ga. 429 ; Robinson v. Cromelein, 15 Mich. 316 ; Schwarz v. Wendell, Walker's Ch. Rep. (Mich.) 267 ; Cresson's Appeal, 91 Pa. 168 ; Rowley's Appeal, 115 Pa. 150 ; Gleghorne v. Gleghorne, 118 Pa. 383 ; Dock v. Schlichter Jute Cordage Co., 167 Pa. 370 ; Delp v. Edlis, 190 Pa. 25.

An answer denying that securities are held in the manner alleged in the bill, and setting out the circumstances under which the defendant does claim to hold them is responsive : Burke's Appeal, 99 Pa. 350 ; Bell v. Farmers Deposit Nat. Bank, 131 Pa. 318.

*Edmund G. Hamersley* and *Frank P. Prichard*, for appellee, cited as to the conclusiveness of the answer : Vollmer's App., 61 Pa. 118 ; Kenney's App., 12 Atl. Repr. 589.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1901 :

By his will, duly probated October 15, 1889, in the office of the register of wills for Philadelphia county, Joseph E. Schell bequeathed to his executors in trust, for the benefit of each of his four daughters, one-eighth part of his residuary estate, and directed that the respective shares of two of his daughters should include eight shares of the capital stock of the Fire Association of Philadelphia, and that the respective shares of the other two daughters should include nine shares of the said stock.   The testator appointed as executors of his will, his son, Frederick H. Schell and Samuel S. Sibbs, to whom letters testamentary were granted the day the will was probated.   The thirty-four shares of stock stood on the books of the association in the name of the testator, and the certificates therefor came into the possession of the executors.   In May, 1894, the executors filed their account which was audited June 14, 1894, by the orphans' court, and an adjudication was filed October 27, 1894, by which the said stock of the association was awarded to the executors of the

will, as trustees for the daughters of the testator in accordance with the directions of his will.

Before the transfer of the stock was made to the executors as trustees, Sibbs became insolvent, made an assignment for the benefit of his creditors, and left the jurisdiction of the court. It was then discovered by the other executor that Sibbs had taken thirty-one shares of the stock and delivered a part of them to the defendant, John H. Deperven, executor of Henry Deperven, deceased, and another part to Clyde E. Barton and Elizabeth S. M. Barton, his wife. Upon the application of parties interested in the estate, Sibbs was removed from his office as trustee under the will, by the orphans' court of Philadelphia county, on June 17, 1899. The bill in this case was then filed by Frederick H. Schell, the other executor, averring, inter alia, the above facts and praying that the defendant and said Bartons might make discovery as to the certificates for the shares of stock; that they be restrained from negotiating it, and that they be ordered to deliver to the plaintiff the stock in their possession. Deperven and the Bartons filed separate answers, but in this appeal we are concerned only with the decree as it affects Deperven.

Samuel S. Sibbs was the active executor in the administration of the estate of Joseph E. Schell, deceased. Prior to the discovery of his misappropriation of the funds of the estate alleged in the bill, he occupied a position of trust and was regarded as a man of good repute and honorable in his business relations. He, as executor of Schell's estate, executed and delivered to Henry Deperven, defendant's testator, a promissory note dated December 31, 1895, for the sum of $1,200, payable three months after date to the order of Deperven. It recited the fact that the maker had delivered four shares of the capital stock of the Fire Association of Philadelphia as collateral security for the prompt payment at maturity of this, and of any other liability of the maker. He also, as said executor, executed and delivered to John H. Deperven, executor, a promissory note, dated November 6, 1897, for the sum of $1,400, payable in six months to the order of Deperven, as executor. There was likewise a recital in this note that Sibbs had delivered the certificate No. 6,791, of four shares of the capital stock of the Fire Association of Philadelphia as collateral security for the prompt pay-

ment at maturity of this, and of any other, liability of the maker. The defendant produced on the trial of the cause, certificate No. 6791, dated March 3, 1882, and certificate No. 6975, dated November 10, 1882, each for four shares of the capital stock of the Fire Association of Philadelphia, standing in the name of Joseph E. Schell. The defendant also held a paper dated December 31, 1890, signed by Sibbs as executor of Schell's estate, assigning to Henry Deperven four shares of the capital stock of the Fire Association of Philadelphia, standing in his name on the books of the association, with a letter of attorney authorizing Deperven to transfer all or any part of the stock.

There was no evidence introduced on the trial to show the circumstances under which the loans, evidenced by the notes, were made, or under which the certificates of stock and the power of attorney came into the possession of the defendant. The plaintiff, the coexecutor of Sibbs, had no knowledge of the loans nor of any of the transactions concerning them.

The court below entered a decree against the defendant, Deperven, that he deliver to the plaintiff all the stock of the Fire Association in his possession and standing in the name of Joseph E. Schell. From this decree Deperven has appealed.

What has been said in considering the appeal of Frederick H. Schell, executor, in the opinion herewith filed, as to the power of one of several executors to pledge the personal property of the estate, and of the duty of the pledgee under the circumstances, also applies to the present appeal.

For the reasons given by the learned judge of the court below, we think he was clearly right in his decree as to the pledge to secure the loan of the $1,400. That was made eight years after the death of Joseph E. Schell, and more than two years after the records of the orphans' court showed that the control of Sibbs, as executor, over the stock had ceased, and that it had been awarded to him as trustee, for the use to which it had been specifically bequeathed. These, as well as other facts in the case, were sufficient to put Deperven on inquiry which would have revealed to him the facts that the testator's estate had been fully administered, and that the stock was then held by Sibbs, not as executor, but in trust for the beneficiaries named in the will. While, as the court below finds, Deperven may have received the notes and the shares of stock held by him

bona fide, yet that will not avail him in this contest in face of the fact that, if he had exercised due care and proper diligence, he would have ascertained the true condition of affairs, and that, as trustee, Sibbs had no right to pledge him the stock for the $1,400 loan. The failure to perform a duty, obligatory upon Deperven, and which would have protected him as well as the cestui que trust, deprives him of any right or claim to this stock, so far as it is held as security for the $1,400 note, and requires him to deliver it to the plaintiff.

The right of the defendant to hold the stock pledged to secure the $1,200 loan rests upon a different basis and is supported by facts quite different from those of the $1,400 loan. It is very properly conceded by the learned trial judge that, if the answer is responsive to the bill, and the allegations in the former are taken as true, the court would have had grounds upon which it might hold that the $1,200 note was made under such circumstances and at such a time as would enable the defendant to hold the four shares of stock, covered by the letter of attorney executed and delivered in 1890, against the plaintiff. The learned judge, however, held that the answer was not responsive to the bill, and that independent proof was necessary to establish the allegation that the original loan and pledge were made in 1890, and that the collateral note of 1895 was a renewal of the note given in 1890. In this we think there was error.

The bill avers that Sibbs wrongfully took the certificates of stock and delivered them to the defendant and that upon demand for the certificates by the plaintiff, the defendant refused to deliver them, "and claimed a right to hold the same as collateral for loans made to the said Samuel S. Sibbs." The bill prays for " discovery as to the certificates for shares of stock of the Fire Association delivered to them (the defendants) by Samuel S. Sibbs, as aforesaid." The answer denies the allegation of the bill that Sibbs wrongfully took any of the certificates of stock and delivered them to the defendant, and avers that Sibbs, acting as executor of the estate of Joseph E. Schell did, on December 31, 1890, borrow of Henry Deperven, defendant's testator, for the use of said estate, $1,200, giving therefor to Deperven a promissory note, signed by Sibbs as executor of Joseph E. Schell, deceased, and that along with said note there

was delivered to Deperven as collateral therefor, certificate No. 6,975 for four shares of stock of the Fire Association of Philadelphia, .in Schell's name together with an assignment of said four shares of stock, with an irrevocable power of attorney to transfer the same ; that on December 31, 1895, said note was renewed for the same amount with the same collateral, and the original power of attorney, dated December 31, 1890, was retained by said Deperven.

It thus appears that the controlling allegation in the bill on which the plaintiff claims to have the stock returned to him, is that it was wrongfully taken by Sibbs and delivered to the defendant. While it is admitted as averred in the bill, that the defendant has possession of the stock and claims to hold it as collateral for loans made to Sibbs, the answer denies the allegation that it was wrongfully acquired, and then states that it was received by defendant's testator on December 31, 1890, from Sibbs as executor of Schell's estate to secure a loan on that date made for the benefit of the estate, and that it is now so held by defendant to secure said loan evidenced by the renewal note of December 31, 1895. This, if true, was a complete answer to the plaintiff's averment that the defendant was a fraudulent holder of the stock and hence had no right to its possession. It was a responsive denial of the allegation that the stock was wrongfully taken and delivered, and a statement of the terms and conditions on which the stock was acquired and now held by defendant. A simple denial by the defendant that Sibbs had wrongfully taken and delivered the stock to the defendant would not have been good. " If a contract be set forth and the defendant be called on to answer it," says Mr. Justice THOMPSON in Pusey v. Wright, 31 Pa. 395, " a denial that it exists, modo et forma, would not be good, according to chancery practice, for this is subject to the implication that it existed in some other form. To avoid this, the defendant should state how it existed, and wherein it had no existence." It was therefore the duty of the defendant in response to the averment of the bill, not only to deny that he had received and now holds the stock wrongfully as alleged in the bill, but it was equally important and requisite that the answer disclose how he did hold it. This was not affirmative matter set up in defense of the plaintiff's claim to the stock, but a direct reply by the defendant

to the manner and way in which the plaintiff's bill alleged the defendant had acquired and now holds the stock.

In Eaton's Appeal, 66 Pa. 483, Mr. Justice SHARSWOOD, after a review of the decisions, both English and American, on the question of the responsiveness of an answer to a bill, states the principles and rules to be deduced from the authorities. " When the plaintiff calls upon the defendant to answer the allegations contained in the bill," says Judge SHARSWOOD delivering the opinion of the court, " he makes him his witness for that purpose only, but for no other. Whatever constitutes in truth a part of the facts stated in the bill, the defendant has a right, and indeed is bound to set out. But he cannot make himself a witness for himself generally, and introduce other facts either in avoidance or defense. . . . Thus if a plaintiff state an act, transaction or contract as the foundation of his equity, the defendant has a right to state the whole of such act, transaction or contract as in truth it was. Otherwise a plaintiff by giving only part of a contract, if the defendant must admit that part, and cannot go on to describe truly all the parts of it, the grossest injustice might be done. The defendant must answer every material allegation in the bill, whether specially interrogated thereto or not, and unless he states the act or contract fully, as it truly was, how can he conscientiously swear that the facts in his answer are true ? Half a fact or half a contract is not the truth. Neither is it true if in truth the terms of a contract are different."

In Burke's Appeal, 99 Pa. 350, a bill was filed to compel the redelivery of certain securities alleged in the bill to have been deposited with the defendant as collateral for a loan. The answer admitted that the securities were held as collateral, but averred that it was to secure another loan. The court below held that the answer was not responsive. In reversing the court, the late Chief Justice STERRETT said : " The appellant was required to answer every material allegation in the bill as fully as if specially interrogated thereto ; and it was his right, as it was clearly his duty, to make full disclosure of all the facts and circumstances connected with and forming a part of the transaction in which the stock was placed. Without doing so, how could he conscientiously swear that the facts stated in his answer were true ? If the stock was not his, and he did not

hold it in his own right absolutely, it was not only his duty to say so, but also to state fully the terms and conditions on which it was received and held by him." And in Fidelity Title & Trust Company v. Weitzel, 152 Pa. 502, our Brother MITCHELL, in delivering the opinion of the court, says : " There (in Burke's Appeal, supra), as here, the answer denied the allegations of the bill, but went further and set up what were averred by defendant as the true facts of the transaction. Our Brother STERRETT, by an examination of the authorities not only in our own but other states, showed that a responsive denial of the averments of the bill is not made any less so by setting forth all the facts, though some new matter may be incidentally introduced thereby."

We are therefore of opinion that the answer of John H. Deperven, executor of Henry Deperven, deceased, was responsive to the allegations of the bill as to the $1,200 loan and the stock held as collateral therefor. As there was no evidence introduced on the trial of the cause to support the allegations in the bill or to contradict the averments in the answer, the latter must be accepted as verity. It was therefore an established fact that the $1,200 were loaned and the stock was pledged therefor on December 31, 1890, while Sibbs, as acting executor, was administering the estate of Joseph E. Schell, deceased, and was duly authorized to make the pledge for the benefit of the estate. Henry Deperven's executor is consequently entitled to hold the four shares of stock of the Fire Association of Philadelphia pledged to secure the loan until that indebtedness is repaid.

The decree of the court below is affirmed as to certificate No. 6791 for four shares of the capital stock of the Fire Association of Philadelphia pledged as security for the $1,400 loan, and reversed as to certificate No. 6975 for four shares of said stock pledged as collateral security for the loan of $1,200 ; and it is adjudged and decreed that the plaintiff is not entitled to recover certificate No. 6975 for the four shares of said stock held as collateral security for the payment of the $1,200 loan without paying said loan, and its interest to the defendant. And it is further ordered that the costs of this appeal be paid in equal proportions by the parties.